**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Dana Quednau, | No. CV-12-571-PHX-GMS |
| Plaintiff, | **ORDER** |
| v. | |
| State of Arizona dba Arizona Department of Economic Security; Nina Ferrer in her capacity as Professional Standards Management and in her personal capacity; Sally Reyes in her capacity as Regional Program Manager and in her personal capacity, | |
| Defendants. | |

Pending before the Court is Defendant State of Arizona's Motion for Summary Judgment on Plaintiff Dana Quednau's claims. (Doc. 31.) For the reasons discussed below, the Court grants the Motion.

**BACKGROUND**

Plaintiff Dana Quednau claims that her former employer, Defendant State of Arizona, retaliated against her after she filed a charge of discrimination with the EEOC. In November 2010, Quednau was hired by the Arizona Department of Economic Security (the "DES") in the Coolidge office of the Agency's Division of Benefit and Medical Eligibility (the "DBME") as a Program Services Evaluator I. (Doc. 31, DSOF ¶ 1; Doc. 36, PSOF ¶ 1.) As a new employee, Quednau began her tenure on probation and spent much of her first five months on the job in training. (Doc. 31, DSOF ¶¶ 2–3; Doc. 36,

PSOF ¶¶ 2–3.)

In April 2011, Quednau learned that co-worker Antoinette Mercado had made comments regarding Quednau's drinking and had implied that Quednau was an alcoholic. (Doc. 31, DSOF ¶ 5; Doc. 36, PSOF ¶ 5.) Quednau submitted a report accusing Mercado of slander, hazing, harassment, and workplace bullying. (Doc. 31, DSOF ¶ 6; Doc. 36, PSOF ¶ 6.) Quednau's report further alleged that Mercado drove recklessly and used sexual slurs in the workplace.  (Doc. 37, Ex. 3.)

On April 25, 2011, Nina Ferrer, Professional Standards Manager for the Central Region, went to the Coolidge office to investigate Quednau's report. (Doc. 31, DSOF ¶ 7; Doc. 36, PSOF ¶ 7.) Ferrer asked Quednau to meet with Mercado to try to resolve the situation, but the Parties dispute whether Quednau refused to do so or stated that she did not want to do so. (Doc. 31, DSOF ¶ 9; Doc. 36, PSOF ¶ 9.) On April 26, 2011, Ferrer and Sally Reyes, Regional Program Manager, met with Quednau and Mercado. (Doc. 31, DSOF ¶¶ 10–12; Doc. 36, PSOF ¶¶ 10–12.)

In response to Quednau's alleged unprofessional behavior during the April 26 meeting, Ferrer prepared and submitted a recommendation to DES-DBME Human Resources ("HR") for Quednau's dismissal. (Doc. 31, DSOF ¶ 13; Doc. 36, PSOF ¶ 13.) HR received this recommendation and supporting documents on April 27, 2011. (Doc. 31, DSOF ¶ 14; Doc. 36, PSOF ¶ 14.)  On May 11, 2011, HR forwarded Ferrer's recommendation to Assistant Director Leona Hodges, the employee responsible for making determinations regarding the termination, promotion, and suspension of DES-DBME employees. (Doc. 31, DSOF ¶¶ 15-16; Doc. 36, PSOF ¶¶ 15-16.)

Quednau contacted her EEO liaison after the April 26 meeting and contacted EEO Administrator Morris Greenridge on May 4. (Doc. 36, ¶¶ PSOF 23, 24, 26, 27.) Greenridge informed Human Resources Manager Kathy Montaño of Quednau's complaints and Montaño told Greenridge that she would direct Mercado to cease using sexual slurs and review the DES sexual harassment policy. (Doc. 36, ¶¶ PSOF 29–30.)

Quednau received a noticeable workload increase during the time that she was

writing her April 2011 report and soliciting witness statements for that report. (Doc. 36, PSOF ¶¶ 5–6, 11, 32, 38.) In response to the increased workload, Quednau filed a charge with the EEOC on May 12, 2011, alleging a sexually hostile work environment and retaliation for reporting that conduct. (Doc. 36, PSOF ¶ 39.)

After receiving Ferrer's recommendation for Quednau's termination on May 11, Assistant Director Hodges reviewed the documentation and discussed the matter with Human Resources Manager Kathy Montaño and Regional Manager Sally Reyes. (Doc. 31, DSOF ¶¶ 15, 18, 19; Doc. 36, PSOF ¶¶ 15, 18, 19.)

The State asserts that Hodges decided to terminate Quednau because her behavior was unprofessional and undermined efforts to improve relations in the Coolidge office. (Doc. 31, DSOF ¶ 19.) Quednau was terminated on May 25, 2011. (Doc. 31, DSOF ¶ 22; Doc. 36, PSOF ¶ 22.)

Quednau filed the present suit against the State, Ferrer in her official capacity, and Reyes in her official capacity. (Doc. 1.) Quednau claimed that Ferrer and Reyes had violated 42 U.S.C. § 1983. (Doc. 1 ¶¶ 36–40.) The Parties stipulated to the dismissal of Quednau's claims against Ferrer and Reyes. (Doc. 19.)

Remaining are Quednau's retaliation claims against the State under both Section 704(a) of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3(a), and analogous provisions of the Arizona Civil Rights Act (the "ACRA"), A.R.S. § 41-1464(A) . (Doc. 1 ¶¶ 1, 31–35, 41–45.) Quednau alleges that the State retaliated against her by increasing her workload and terminating her because she filed an EEOC charge. (Doc 1, ¶¶ 35, 45.) The State moves for Summary Judgment on these remaining claims. (Doc. 31.)

## DISCUSSION

### I.   LEGAL STANDARD

Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ.

P. 56(a). Substantive law determines which facts are material and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). "A fact issue is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Villiarimo v. Aloha Island Air, Inc.,* 281 F.3d 1054, 1061 (9th Cir. 2002) (quoting *Anderson,* 477 U.S. at 248). Thus, the nonmoving party must show that the genuine factual issues "'can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.'" *Cal. Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.,* 818 F.2d 1466, 1468 (9th Cir. 1987) (quoting *Anderson,* 477 U.S. at 250).

Because "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, . . . [t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor" at the summary judgment stage. *Anderson,* 477 U.S. at 255 (citing *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 158–59 (1970)); *Harris v. Itzhaki,* 183 F.3d 1043, 1051 (9th Cir. 1999) ("Issues of credibility, including questions of intent, should be left to the jury.") (citations omitted).

**II.  ANALYSIS**

Quednau must prove her claim of retaliation by showing facts that demonstrate that: (1) she engaged in an activity protected by Title VII; (2) her employer subjected her to a materially adverse employment action; and (3) there was a causal link between the protected activity and the adverse action. *Vasquez v. County of Los Angeles,* 349 F.3d 634, 646 (9th Cir. 2003).

As to Quednau's ACRA retaliation claim, the Act is "generally identical to Title VII, and therefore federal Title VII case law is persuasive in the interpretation of the [ACRA]." *Bodett v. CoxCom, Inc.,* 366 F.3d 736, 742 (9th Cir. 2004) (citing *Higdon v. Evergreen Int'l Airlines, Inc.,* 138 Ariz. 163, 165, 673 P.2d 907, 909–10 n.3 (1983)) (internal quotations omitted); *see Timmons v. City of Tucson,* 171 Ariz. 350, 354, 830

P.2d 871, 875 (Ct. App. 1991). The ACRA's prohibition against retaliation, A.R.S. § 41–1464(A), is "essentially identical" to the prohibition under Title VII. *Storey v. Chase Bankcard Services, Inc.,* 970 F. Supp. 722, 731 (D. Ariz. 1997). Thus, the Court will analyze both of Quednau's retaliation claims under federal law.

### A. Protected Activity

Under the first prong of Title VII's retaliation provision, Quednau must prove that she was retaliated against for opposing an employment practice made unlawful by Title VII, or because she "has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing" related to Title VII enforcement. 42 U.S.C. § 2000e-3(a); *see also Nelson v. Pima Cmty. Coll.,* 83 F.3d 1075, 1082 (9th Cir. 1996). The opposition clause protects "only those employees who oppose what they reasonably perceive as discrimination *under the Act*." *Learned v. City of Bellevue*, 860 F.2d 928, 932 (9th Cir. 1988). While an employee may fail to prove the alleged unlawful employment practice but still prevail on a retaliation claim, "the opposed conduct must fairly fall within the protection of Title VII to sustain a claim of unlawful retaliation." *Id.* (citing *Silver v. KCA, Inc.*, 586 F.2d 138, 132 (9th Cir. 1978)).

Quednau alleges that she engaged in an activity protected by Title VII by filing her May 12, 2011, EEOC charge. The State acknowledges that filing an EEOC charge is generally protected conduct, but argues that Quednau's charge does not qualify because it was not in opposition to any "practice made unlawful" by Title VII.

Quednau asserts that she opposed Mercado's comments that created a hostile work environment based on sex. Title VII is violated "when the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21 (1993) (internal quotations and citations omitted). To prevail on a hostile work environment claim, Quednau would need to show that her work environment was both subjectively and objectively hostile; that is, she would need to demonstrate that she perceived her work environment to be

hostile, and that a reasonable person in her position would perceive it to be so. *Dominguez–Curry v. Nevada Transp. Dept.,* 424 F.3d 1027, 1034 (9th Cir. 2005) (internal citations omitted). She would also need to show evidence sufficient to establish that any harassment that took place was because of sex. *Id.* (internal citations and quotations omitted).

In analyzing whether the alleged conduct that Quednau opposed created an objectively hostile work environment, this Court must assess all the circumstances, "including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* (quoting *Clark Cty. Sch. Dist. v. Breeden,* 532 U.S. 268, 270–71 (2001)) (internal citation omitted). "Simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Faragher v. City of Boca Raton,* 524 U.S. 775, 788 (1998) (internal citation omitted).

Quednau does not produce evidence that the conduct she opposed constituted sufficiently severe or pervasive discrimination because of sex to establish a retaliation claim. Much of the behavior Quednau alleged does not relate to gender in any manner. Quednau provides no evidence that Mercado's comments on Quednau's drinking or work were due to the fact that Quednau is a woman.

Quednau further alleged that Mercado used sexual slurs in the workplace. In her April 21, 2011, complaint to her supervisors, Quednau asserted that Mercado "would curse to extremes (using sexual slurs) making for a very hostile work environment." (Doc. 37, Ex. 4.) Quednau did not elaborate as to the contents or frequency of these sexual slurs. The remainder of Quednau's report focused on Mercado's driving and other behavior unrelated to gender. *Id.* Similarly, in her complaint sent to HR on April 26, 2011, Quednau asserted that Mercado made "comments to [Quednau] that were inappropriate and unprofessional (using sexual slurs)," but otherwise focused on unrelated behavior. In her May 4, 2011, e-mail to EEO Administrator Morris Greenridge,

Quednau wrote that "[w]e should have the opportunity to report misconduct and sexual harassment," but did not elaborate further regarding the alleged sexual harassment. (Doc. 37, Ex. 8.) In a May 4, 2011, e-mail from Human Resources Manager Kathy Montaño to Greenridge, Montaño reported that when asked on April 25 about the type of sexual slurs used by Mercado, Quednau responded that "'she used the 'f-word' or 'f-off.'" (Doc. 37, Ex. 10.) Quednau subsequently testified that Mercado told her to "get f—ed" and that Mercado used the F word on a "continuous basis every day…[i]t was raunchy F words. It always came with a joke of some sort." (Doc. 3, Ex. 1 at 74, 84.)

Quednau largely provides only conclusory statements in asserting that she was sexually harassed. She provides no facts by which a reasonable jury could conclude that she was subjected to harassment because of her sex, or that Mercado's use of the term constituted an objectively hostile work environment.

As previously noted, to state a claim for sexual harassment, the Plaintiff must prove that "any harassment took place 'because of sex.'" *Dominguez-Curry,* 424 F.3d 1027 at 1034 (quoting *Nichols v. Azteca Rest. Enters., Inc.,* 256 F.3d 864, 871-72 (9th Cir. 2001) (quoting *Oncale v. Sundowner Offshore Servs., Inc.,* 523 U.S. 75, 79, (1998))). Among other complaints that have no apparent reference to gender or sex, Quednau complained that Mercado, a fellow female employee, used the "F" word every day and that "[i]t always came with a joke of some sort." Quednau further states without additional detail that Mercado "'used the 'f-word' or 'f-off.'" (Doc. 37, Ex. 10) or told her to "get f—ed." It is certain that the use of this vulgar term can be and most likely was offensive to Quednau. It is also true that a primary definition of the general term is a crude reference to the act of sexual intercourse and thus could plausibly have some connection to gender.

But, the term has also acquired a connotation of being a vacuous vulgarity used only for emphasis by those who wish to express crude or harsh emotions. Although the term generally refers to a sex act, Quednau has put forth no facts from which a reasonable jury could conclude that Mercado used that term in her relations with Quednau precisely

because of Quednau's sex. In the absence of such a showing, no reasonable jury could conclude that the use of the "F" term, in this case, was sexually discriminatory.

Further, Quednau has not set forth facts from which a reasonable jury could determine that Mercado's use of the F-word subjected Quednau to an objectively hostile work environment. In determining whether the alleged conduct created an objectively hostile work environment, a court "must assess all the circumstances, 'including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Dominguez-Curry*, 424 F.3d at 1034 (quoting *Breeden,* 532 U.S. at 270-71).

Quednau did testify at her deposition that Mercado used the F-word on a daily basis, but she raises no facts which suggest that the use of the term was physically threatening or humiliating to her as opposed to being merely an offensive utterance. *Dominguez–Curry,* 424 F.3d at 1034. Further, she sets forth no facts from which a reasonable jury could conclude that Mercado's use of the term interfered with Quednau's work performance. Mercado was a co-worker; she was not Quednau's supervisor. Quednau offers no explanation as to how her work environment was so substantially impacted by Mercado's daily use of the vulgarity. Finally, for the reasons set forth above, Quednau does not set forth facts from which a jury could conclude that Mercado used the F-word because of Quednau's sex.

"Not every insult or harassing comment" constitutes sexual harassment. Rather, to constitute a hostile work environment such comments must be "[r]epeated derogatory or humiliating statements." *See Ray v. Henderson,* 217 F.3d 1234, 1245 (9th Cir. 2000); *see also EEOC v. Hacienda Hotel,* 881 F.2d 1504, 1516 (9th Cir. 1989), *overruled on other grounds, Burrell v. Star Nursery, Inc.,* 170 F.3d 951 (9th Cir. 1999) (finding "severe or pervasive" harassment when one supervisor "repeatedly engaged in vulgarities, made sexual remarks, and requested sexual favors" while another supervisor "frequently witnessed, laughed at, or herself made these types of comments.").

At most, the alleged sexual slurs as alleged by Quednau amount to offensive comments insufficient to give rise to a claim of sexually-based harassment. Although Quednau may have subjectively felt that Mercado's language created a hostile work environment, she offers insufficient facts to conclude that a reasonable person would have perceived it to be so. *See Dominguez–Curry,* 424 F.3d at 1034. Quednau's allegations do not reasonably fall under Title VII and thus fail to establish that she engaged in protected activity under the Act when she filed her EEOC charge.

## CONCLUSION

Quednau fails to establish a prima facie case of Title VII retaliation because she fails to raise issues of fact on which a reasonable jury could conclude that she engaged in protected activity under the Act.

**IT IS THEREFORE ORDERED** that the State of Arizona's Motion for Summary Judgment (Doc. 31) is **GRANTED**. The Clerk of Court is directed to terminate this action and enter judgment accordingly.

Dated this 20th day of September, 2013.

*/s/ A. Murray Snow*
G. Murray Snow
United States District Judge